STATE OF NORTH CAROLINA v. JOHN ALLEN SAWYER

No. 7519SC196

(Filed 6 August 1975)

1. **Jury § 6— examination of jurors — question based on inadequate statement of law**

   The trial court in a prosecution for drunken driving did not err in refusing to permit defense counsel to ask prospective jurors whether there was "any member of the panel that would convict the defendant solely upon the results of a breathalyzer test, if the results exceeded .10 percent or more by weight of alcohol in the defendant's blood," since the question was based upon an inadequate statement of the law.

2. **Automobiles § 126; Criminal Law § 64— admissibility of breathalyzer results**

   The results of a breathalyzer test were properly admitted in evidence where competent evidence was presented to show that the requirements of G.S. 20-139.1 and G.S. 20-16.2(a) had been satisfied.

3. **Automobiles § 126; Criminal Law §§ 50, 64— witness's opinion as to law**

   The trial court in a prosecution for drunken driving did not err in the exclusion of an officer's testimony that he was required under the law to assist a defendant who requests a blood test since the opinion of the witness as to the law was not competent in evidence.

4. **Automobiles § 126; Criminal Law § 64— breathalyzer test — additional private test — officer's failure to authorize analysis**

   Where a defendant arrested for drunken driving was administered a breathalyzer test by a law officer, defendant was thereafter allowed to contact a physician of his choice, the arresting officer took defendant to the county hospital so that a blood alcohol test could be conducted by the physician, the physician drew a sample of defendant's blood which he gave to defendant's attorney, and the county hospital did not do the required type of analysis, refusal of the arresting officer to sign forms authorizing that the blood sample be sent to N. C. Memorial Hospital in Chapel Hill for analysis did not violate defendant's rights under G.S. 20-139.1(d) and render the breathalyzer results inadmissible since the officer complied with the mandate of the statute by taking defendant to a physician of his choice for the additional test and it was defendant's responsibility to obtain an analysis of the blood sample.

APPEAL by defendant from *Seay, Judge.* Judgment entered 1 November 1974 in Superior Court, RANDOLPH County. Heard in the Court of Appeals 8 May 1975.

Defendant was convicted in district court of operating a motor vehicle on a public highway while under the influence of intoxicating liquor. On appeal to superior court he again pled not guilty and was tried de novo.

The State's evidence showed: At approximately 1:30 a.m., 15 December 1973, N. C. Highway Patrol Sergeant Blackwell stopped an automobile he had observed twice veer across the center line while it was proceeding on a rural paved road near Asheboro. Defendant was the vehicle's driver and sole occupant. Noticing an odor of alcohol on defendant's breath and observing him to stagger and be unsteady on his feet, Blackwell arrested defendant and took him to the Randolph County Jail. A breathalyzer test showed .12 percent by weight of alcohol in defendant's blood.

Defendant testified and denied he was intoxicated but admitted he had been drinking beer. The jury found him guilty as charged and from judgment imposing a suspended sentence, defendant appealed.

---

---

*Attorney General Edmisten by Associate Attorney Isaac T. Avery III for the State.*

*Ottway Burton and Millicent Gibson for defendant appellant.*

PARKER, Judge.

[1] The trial court sustained an objection to the following question asked the panel of prospective jurors by defendant's counsel:

> "Is there any member of the panel that would convict the defendant solely upon the results of a breathalyzer test, if the results exceeded .10 percent or more by weight of alcohol in the defendant's blood?"

There was no error in this ruling.

The voir dire examination of prospective jurors has a double purpose, (1) to ascertain whether grounds for challenge for cause exist and (2) to enable counsel to exercise intelligently the peremptory challenges allowed by law. However, counsel's examination into the fitness of jurors is subject to the trial judge's close supervision, and the regulation of the manner and extent of counsel's inquiry rests largely in the discretion of the trial court. *State v. Jackson,* 284 N.C. 321, 200 S.E. 2d 626 (1973). An ambiguous, confusing hypothetical question, or one containing an incorrect or inadequate statement of the law, is improper to submit to prospective jurors. *State v. Bryant,* 282 N.C. 92, 191 S.E. 2d 745 (1972). The question which defendant's counsel sought to ask in this case is based on an inadequate statement of the law. In this connection we note that the amendment to G.S. 20-138 made by Chap. 1081 of the 1973 Session Laws did not become effective until 1 January 1975 and is thus not applicable to this case. There has been no abuse of the trial court's discretion in sustaining the district attorney's objection to counsel's question to the prospective jurors, and this assignment of error is overruled.

[2] Before the results of the breathalyzer test were admitted in evidence, Patrolman Byrd, the State's witness who administered the test, testified that at the time the test was administered he possessed a valid and currently effective permit from the State Board of Health for administering a breathalyzer test and that in giving the test he followed the methods, techniques,

and procedures as prescribed by the State Board of Health. He also testified that prior to giving the test he informed defendant both verbally and in writing of his rights as required by G.S. 20-16.2(a). Since competent evidence was admitted to show that the requirements of G.S. 20-139.1 and of G.S. 20-16.2(a) had been satisfied, the results of the test were properly admitted in evidence. *State v. Powell,* 279 N.C. 608, 184 S.E. 2d 243 (1971).

[3, 4] During cross-examination of Sergeant Blackwell, defendant's counsel asked this witness whether "under the law you are required to assist a defendant who requests a blood test, help and aid in getting a blood test and take him to a person to get one." An objection to that question was sustained and counsel again asked in substance the same question, objection to which was again sustained. Had the witness been permitted to answer, he would have testified, "We are required to assist a person, yes, sir." Defendant now assigns error to the exclusion of this testimony. There was no error in the court's rulings sustaining the district attorney's objections. The opinion of the witness as to the law was not competent in evidence. *See* 1 Stansbury's N. C. Evidence (Brandis Rev.) § 130. Defendant's contention on this appeal that by sustaining these objections the trial court improperly suppressed evidence that defendant's statutory rights were violated is not properly presented by this or any other assignment of error. Nevertheless, we have carefully considered defendant's contention and find that defendant was accorded all the rights provided by Chapter 20 of the General Statutes to a person arrested for a violation of G.S. 20-138. Under G.S. 20-139.1(d) the person tested for alcohol content of blood under the direction of a law enforcement officer may have an additional chemical test or tests administered to him by a physician or other qualified person of his own choosing. G.S. 20-139.1(d) further provides that any law enforcement officer having in his charge any person who has submitted to the chemical test under the provisions of G.S. 20-16.2, "shall assist such person in contacting a qualified person as set forth above for the purpose of administering such additional test." The record shows that after the breathalyzer test was administered, defendant was allowed to contact a physician of his choice, Dr. Wilhoit, and that Sergeant Blackwell then took defendant to Randolph County Hospital to meet Dr. Wilhoit for the express purpose of administering a "blood alcohol test" to defendant. Defendant's attorney, who had been called to witness the breathalyzer

test but who arrived at the courthouse too late to do so, was also present at the hospital. Dr. Wilhoit testified that he drew a sample of defendant's blood which he gave to defendant's attorney, that the Randolph County Hospital did not do this type of analysis, and that he "was informed by the nurse and the officer" that the only way he could get the sample sent to North Carolina Memorial Hospital at Chapel Hill was by authorization of the arresting officer. Sergeant Blackwell testified that he "was asked to sign some forms at the hospital," which he did not do because he had not requested that the additional test be taken. Apparently this refusal of the arresting officer to sign the forms at the Randolph County Hospital is the basis of defendant's present contention that his statutory rights were denied him in this case. However, on the record before us we find that defendant suffered no such denial of rights as to affect the validity of his trial and conviction. The arresting officer, when requested to do so, did promptly take him to the doctor chosen by defendant to administer the additional test, thereby complying with the mandate of G.S. 20-139.1(d). The blood sample was drawn by the doctor, and was delivered to defendant's attorney. It was defendant's responsibility to see to obtaining its analysis. That he failed to do so did not render the results of the breathalyzer test incompetent in evidence. G.S. 20-139.1(d) expressly provides that "[t]he failure or inability of the person tested to obtain an additional test shall not preclude the admission of evidence relating to the test or tests taken at the direction of a law-enforcement officer."

We have carefully examined all of defendant's remaining assignments of error and find no prejudicial error in defendant's trial or in the judgment entered.

No error.

Judges BRITT and VAUGHN concur.